UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIR-RAVEN R. RODGERS,

      Plaintiff,

      v.                                               26-CV-583 (JLS)

JOHN C. GARCIA, *Erie County
Sheriff*,
DEPUTY ELLING,
DEPUTY JOHN DOE #1553, and
DEPUTY BRENNA
BRAUNSCHEIDEL,[1]

      Defendants.

_____

## DECISION AND ORDER

*Pro se* Plaintiff Sir-Raven Rodgers filed this action seeking relief under 42

U.S.C. § 1983.  Dkt. 1.  He alleges his Fourteenth Amendment rights were violated

when he was assaulted by inmates at the Erie County Holding Center.  *Id.*  Rodgers

was granted permission to proceed *in forma pauperis* ("IFP").  Dkt. 8.

By order dated May 27, 2026, the Court screened his amended complaint[2]

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).  Dkt. 12 ("initial screening

_____

[1] The Clerk of Court is requested to update the caption as it appears above, consistent with the *Valentin* order (Dkt. 17).

[2] Before the complaint was screened, Rodgers filed a motion for leave to file an amended complaint, Dkt 9, which was granted.  Dkt. 10.

order"). That order dismissed all claims, except for the failure to protect claim arising from the second assault, with leave to file an amended complaint.

Rodgers timely filed a second amended complaint (Dkt. 14), as well as a motion for appointment of counsel (Dkt. 15). The Court now screens the second amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).[3]

For the reasons below, Rodgers's Fourteenth Amendment failure to protect claims may proceed to service as follows: the claims arising from the first assault may proceed to service against Officer John Doe (Badge #1553) in his individual capacity; and the claims arising from the second assault may proceed to service against Deputy Braunscheidel and Deputy Elling in their individual capacities. The remainder of Rodgers's claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim, without leave to amend. Rodger's motion for appointment of counsel (Dkt. 15) is denied without prejudice.

## DISCUSSION

## I. LEGAL STANDARDS

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental

---

[3] On July 16, 2026, Rodgers filed correspondence to the Court, Dkt. 19, regarding the exhaustion of his administrative remedies. However, the Supreme Court has expressly rejected state laws requiring that a plaintiff exhaust his administrative remedies before filing suit under 42. U.S.C. § 1983. *See Williams v. Reed*, 604 U.S. 168, 174 (2025) (citing *Felder v. Casey*, 487 U.S. 131, 139 (1988) ("a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted")).

2

entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). Permission to amend, however, "is not required where the plaintiff has already been afforded the opportunity to amend." *Bivona v. McLean*, No. 9-19-CV-0303 (MAD) (TWD), 2019 WL 2250553, at *5 (N.D.N.Y. May 24, 2019) (citing cases); *Cancel v. New York City Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) (summary order) ("[T]he district court had already permitted [the plaintiff] to amend his complaint once, and nothing in his amended complaint suggested that he would be able to state a valid . . . claim if he were granted leave to amend a second time. Therefore, granting [the Plaintiff] leave to amend his amended complaint as to these claims would have been futile."); *Cato v. Zweller*, No. 6:21-CV-6207 EAW, 2023 WL 8653857, at *2 (W.D.N.Y. Dec. 14, 2023) (dismissing the amended complaint with prejudice because it "does not remedy any of the pleading deficiencies identified in the Screening Order").

3

## II.    ALLEGATIONS

Liberally read, the allegations in the second amended complaint largely match those asserted in the amended complaint arising from Rodger's confinement at the Erie County Holding Center.

On January 15, 2026, Deputy Elling, Deputy John Doe (Badge #1553), and Deputy Braunscheidel "all acted deliberately indifferent towards [Rodgers's] mental/physical safety and failed to protect [him] from foreseeable assaults[.]" Dkt. 14 at 5-6. All three were "well aware" of Rodgers's recent history of being targeted and assaulted by inmates due to Rodgers's criminal charges. *Id.* at 5.

On "bravo long unit at 10:40 a.m.[,]" Officer John Doe "failed to protect [Rodgers] from a gang assault by two inmates . . . after both inmates were verbally threatening [him] (w[h]ich officer John Doe heard)." *Id.* at 6. Both of those inmates had a "known violent past." *Id.* "Officer John Doe intentionally ignored Facility policy and procedure (after he heard [Rodgers's] life being threatened) that would have prevented [the] above mentioned assault." *Id.* Once the assault began, John Doe also did nothing to stop the assault. *Id.* Rodgers was assaulted because "[i]t is normal Erie County Policy to not act on a dangerous situation until[] actual physical damages is being done[.]" *Id.*

After this assault, Deputy Braunscheidel "escorted [Rodgers] to the classification office where she showed [him] a photo array of people who were on bravo short unit." *Id.* Rodgers pointed out a particular inmate and "verbalized [his] problems with him." *Id.* Deputy Braunscheidel then informed Rodgers that he "had

4

to be housed with [the] above mentioned inmate anyway." *Id.* There were other unidentified officers in the classification office at this time. *Id.*

Rodgers was then brought to the unit against his will. *Id.* Rodgers told Deputy Elling that he was not able to be housed there, but was still "made to enter" the unit where he was "immediately assaulted by the same inmate [he had] pointed out in the photo array." *Id.* This inmate "also had a known violent past." *Id.*

Rodgers "was written a misbehavior report for both incidents and was found not guilty" while the inmates who attacked him were charged criminally. *Id.* As a result of the attacks, Rodgers sustained injuries to his neck, rib, head, and back as well as a cracked tooth. *Id.* at 5, 7-8. Rodgers filed grievances regarding these incidents. *Id.* at 10-13.

John Garcia "supervises the operations of the Erie County Holding Center" and "failed to properly train security staff who . . . knowingly ignored facility procedure in favor of . . . normal facility customs" which resulted in Rodgers's assaults. *Id.* at 6.

Defendants are sued in their individual and official capacities. *Id.* at 2-3. Rodgers seeks monetary damages. *Id.* at 5.

## III.  ANALYSIS

### A.  Official Capacity Claims

As the initial screening order explained, Dkt. 12 at 6-7, "a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello,* 288 F. Supp.

5

2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom.[4] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Rodgers attempts to assert a *Monell* claim by alleging that "[i]t is normal Erie County Policy to not act on a dangerous situation until[] actual physical damages is being done[.]" Dkt. 14 at 6. But Rodgers also alleges that Officer John Doe "intentionally ignored Facility policy and procedure (after he heard [Rodgers's] life being threatened) that would have prevented [the] above mentioned assault." *Id.* Given these vague and contradictory assertions, the second amended complaint does not plausibly allege a *Monell* claim.

---

[4] An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 453 (E.D.N.Y. 2021) (citing cases).

6

Rodgers also attempts to assert a *Monell* claim by alleging that Erie County Sheriff John Garcia, a policymaker, "failed to properly train security staff who . . . knowingly ignored facility procedure in favor of . . . normal facility customs" that resulted in Rodgers's assaults. *Id.*

Where municipal liability is premised on a failure to train or supervise, the Supreme Court has held that "the inadequacy of police training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1992). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983." *Id.* at 389 (citation omitted); *see also Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir. 2007) (noting that a deliberate indifference showing is required for both failure-to-train and failure-to-supervise claims) (citing *Harris,* 489 U.S. at 390). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

To plausibly state a claim for municipal liability based on a failure to train or supervise theory, a plaintiff must allege:

> (1) that the municipal policymakers know "to a moral certainty" that their employees will face a given situation; (2) that the situation either presents employees with a difficult choice that would be aided by training or supervision or that "there is a history of employees mishandling the situation"; and (3) the wrong choice or response from

7

the employees "will frequently cause the deprivation of a citizen's constitutional rights."

*Michel v. Orange County, N.Y.*, No. 22-190-PR, 2024 WL 461693, at *2 (2d Cir. Feb. 7, 2024) (summary order) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)).

Rodgers has not made any specific allegations about Erie County's deficiencies in training or how Garcia, apart from his position as Erie County Sheriff, was directly responsible for the training or lack of training in preventing inmate attacks. *Marte v. N.Y. City Police Dep't*, No. 10 CIV. 3706 PKC, 2010 WL 4176696, at *3 (S.D.N.Y. July 14, 2015) ("Plaintiffs do not identify procedural manuals or training guides, nor do they highlight relevant particular aspects of police training or supervision."). As discussed, Rodgers alleges that there were conflicting procedures and practices but does not specify what those polices and practices actually were or how Garcia implemented or was involved with either. Nor has Rodgers offered facts to suggest a "pattern of similar constitutional violations by untrained employees" to put Garcia on notice or suggest his deliberate indifference to potential attacks. *Connick*, 563 U.S. at 62; *see also Hedrick v. Alfred*, No. 9:25-CV-0980 (BKS/PJE), 2026 WL 407508, at *16 (N.D.N.Y. Feb. 13, 2026) ("In other words, the Court has no basis to plausibly infer that defendants . . . failed to take steps to prevent inmates from being assaulted . . . leading up to the alleged assaults against plaintiff, let alone did so out of deliberate indifference to plaintiff's well-being.").

8

Rodgers's allegations are insufficient to state a plausible failure to train or supervise claim against Garcia. *See Tate v. City of New York*, No. 16-CV-1894 (KAM) (SMG), 2017 WL 10186809, at *13 (E.D.N.Y. Sept. 29, 2017) (failing to state a failure to train or supervise claim where plaintiff did not identify any specific deficiency in the training program or specific facts beyond the municipal defendants' supervisory authority to support a failure to supervise claim).

Because Rodgers has had an opportunity to amend and the second amended complaint still gives no indication that Rodgers can state a plausible claim for municipal liability, Rodgers's claims against Defendants in their official capacities are dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend. *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) ("While it may be true that [Section] 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation . . . to plead a facially plausible claim." (citation modified)).

## B.    Failure to Protect

As the initial screening order explained, Dkt. 12 at 7-8, failure to protect claims brought by a pretrial detainee are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To plausibly allege a failure to protect claim under the Fourteenth Amendment, a plaintiff "must plead two elements: (1) an 'objective' element, which requires a showing that the risk of harm is sufficiently serious, and (2) a 'mental' element,

9

which requires a showing that the officer knew or should have known of the risk of serious harm but acted with deliberate indifference to that risk." *Bilson v. City of New York*, No. 25-CV-2479 (MMG), 2025 WL 1184410, at *2 (S.D.N.Y. Apr. 23, 2025) (quoting *Darnell*, 849 F.3d at 29).

### 1.    The First Attack

In contrast to the amended complaint, Rodgers's second amended complaint sets forth sufficient facts to support that Officer John Doe was aware or should have been aware that two inmates were threatening Rodgers and were likely to assault him. Dkt. 14 at 6. Specifically, Rodgers alleges that Officer John Doe heard the two inmates verbally threatening him prior to the assault and then did nothing to stop the assault once it started. *Id.* As such, Rodgers has stated a failure to protect claim that may proceed to service against Officer John Doe in his individual capacity regarding the first attack.

As to the other defendants, however, Rodgers has not pled sufficient facts to show that Elling, Braunscheidel, or Garcia knew or should have known of the specific threat to Rodgers from these two inmates that resulted in the first attack. Those claims are dismissed without leave to amend.

### 2.    The Second Attack

As for the second attack, Rodgers alleges that he alerted Deputy Braunscheidel and other staff via the photo array that he had "problems" with the inmate just before the second attack and just minutes after he was involved in a separate assault by two other inmates. *Id.* The second amended complaint further

alleges that just before the second attack, Rodgers told Elling that he would not be able to be housed in that unit due to the issues he identified. *Id.* Accordingly, Rodger's failure to protect claim arising from the second assault may proceed to service against Deputy Braunscheidel and against Deputy Elling in their individual capacities.

As for the remaining defendants, Rodgers does not allege their personal involvement in failing to prevent the second assault. The failure to protect claims against other Defendants in their individual capacities are dismissed without leave to amend.

## IV.    MOTION TO APPOINT COUNSEL

There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The assignment of counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). In determining whether to assign counsel, courts must "first determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) (describing the threshold showing to be "some likelihood of merit").

If this threshold is met, courts consider the following factors in determining whether appointment of counsel is warranted:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major

proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62.

Rodgers argues that he is "an indigent inmate with little to no knowledge of the Federal Rules of Civil Procedure." Dkt. 15 at 1. He also has "limited access to research material." *Id.* He provides several law firms and legal organizations that he has contacted, unsuccessfully, for legal assistance. *Id.*

Notwithstanding these challenges, Rodgers has sufficiently pled more than one Section 1983 claim proceeding to service. Even assuming that Rodgers has met the threshold of some likelihood of merit, the Court finds that the other factors do not weigh in favor of appointment of counsel at this time. Rodgers's allegations do not present novel or complex issues, and to date, Rodgers has been able to effectively litigate this action.

Rodgers's motion for appointment of counsel is, therefore, denied without prejudice.

## CONCLUSION

For the reasons above, Rodgers's Fourteenth Amendment failure to protect claims may proceed to service as follows: the claims arising from the first assault may proceed to service against Officer John Doe (Badge #1553) in his individual capacity; and the claims arising from the second assault may proceed to service against Deputy Braunscheidel and Deputy Elling in their individual capacities. The remainder of Rodgers's claims are dismissed under 28 U.S.C.

12

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim without leave to amend.  Rodgers's motion for appointment of counsel (Dkt. 15) is denied without prejudice.

## ORDER

IT HEREBY IS ORDERED that Rodgers's Fourteenth Amendment failure to protect claim arising from the first assault against Officer John Doe (Badge #1553) in his individual capacity and Fourteenth Amendment failure to protect claims arising from the second assault against Deputy Braunscheidel and Deputy Elling in their individual capacities may proceed to service; and it is further

ORDERED that the remaining claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim without leave to amend; and it is further

ORDERED that the Clerk of Court shall terminate John C. Garcia as a Defendant; and it is further

ORDERED that Rodgers's motion to appoint counsel (Dkt. 15) is denied without prejudice; and it is further

ORDERED that the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, the second amended complaint (Dkt. 14), and this Decision and Order upon Deputy Braunscheidel, Deputy Elling, and Officer John Doe (Badge #1553), once identified, without Rodgers's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Rodgers's favor; and it is further

13

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Erie County Attorney's Office is requested to ascertain the full name, with correct spelling, and last known service address of Deputy Elling and Officer John Doe (Badge #1553) within 30 days of the date of this Decision and Order. The County Attorney need not undertake to defend or indemnify these individuals at this time. Rather, this Decision and Order merely provides a means by which Rodgers may name and properly serve these Defendants, as instructed by the Second Circuit in *Valentin*.

The County Attorney shall produce the information specified above by mail (Pro Se Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this Decision and Order. Upon receipt of this information, the Clerk of Court shall amend the caption of this action to reflect the full names of these Defendants; and it is further

ORDERED that the Clerk of Court shall forward a copy of this Decision and Order and the second amended complaint by email to County Attorney Jeremy Toth, Jeremy.Toth@erie.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants shall answer or respond to the remaining two failure to protect claims of the second amended complaint; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Rodgers must immediately notify the Court in writing each time

14

his address changes.  Failure to do so may result in dismissal of the action with

prejudice.


SO ORDERED.

Dated:      July 17, 2026
            Buffalo, New York


_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE